On the Merits.
Monroe, J.
Plaintiff claims to be the owner,, in possession, of five acres of land with the saw-mill plant thereon, in the Parish of Webster, and enjoins the sheriff of said parish from advertising and selling the same under a writ of fieri facias, issued in the suit of The Lane & Bodley Co. vs. H. S. Matthews, No. 4701 of the docket of the District Court.
The answer of The Lane & Bodley Company is, substantially, as follows, to-wit:
It alleges that II. S. Matthews made an application to purchase an outfit, consisting of engine, boiler, planers, machinery, etc., 'for a first-class saw-mill, the price of which' exceeded six thousand dollars; that respondent shipped the same to Webster Parish; sent an agent to deliver it and! to secure the purchase price; and employed an attorney to- *1941 advise said agent; that the attorney so employed advised that it would be better to buy the land upon which the outfit had been erected and take a mortgage on the same, and also retain a vendor’s lien on the outfit; that said Matthews applied to W. S. Wadley, the owner of the land upon which the saw-mill had been, or was being, erected, who agreed to sell it, and that a surveyor was employed to furnish an exact description of the five acres upon which the said mill outfit was then located; that he furnished a certificate showing that the same was located on the south half of the northeast quarter of the northeast quarter of the northeast quarter of section 7, township 17, north range 9, west, in Webster Parish; and that said Wadley made a deed thereof to said Matthews, the one intending to sell, and the other intending to buy, the parcel of land upon which said mill outfit was then located; that said] Matthews afterwards made a transfer of the land so purchased to the Lake Bisteneau Lumber Company, by an act which recites that it is “the same land upon which the said Lake Bisteneau Lumber Company has placed a valuable plant,” and that said Wadley and Matthews, and their transferrees, are estopped to deny that said mill plant is on the land described, since, if ,the description is erroneous, it is a clerical error, the intention of the parties being to buy and sell the land upon which the mill plant stood. Respondent further alleges that, at the time that the vendors of the plaintiff pretend to have seized and sold said plant, it was in the possession of the sheriff, under respondent’s seizure, and that any sale under an adverse seizure was null. There is, then, a prayer for the dissolution of the injunction, with certain damages, which are alleged, and with the recognition of respondents’ rights in and upon the mill plant and the land upon which it is situated.
To this answer, the plaintiff offered to file a pleading, somewhat in the nature of a replication, in which there is set up, 'inter dbiaf the pleas of res adjudicaba, and of estoppel, and the objections of the defendant to ■certain portions thereof were in part sustained and in part overruled by the judge a quo. The parties, thereafter, proceeded to trial and there was judgment for the plaintiff in injunction, from which the defendant has appealed.
The facts disclosed by the evidence in the record, are as follows:
Sometime prior to the month of April, 1891, H. S. Matthews, C. M. Andrews, J. W. Miller, B. E. Andrews, J. W. Catlett, John L. Zeigler, *1942 II. O. Waller, and J. II. Gearhart, or some of them, agreed to establish a corporation, to be known as the Lake Bisteneau Lumbér Company,, for the purpose of engaging in the saw-mill business, in connection with which agreement they appear to have made some arrangement with W. G. Wadley and C. T. Crowell, for -the use of certain timber lands, owned by those gentlemen in the Pajjish of Webster. As the next step in the establishment of the business, Matthews, upon April 9, 1891,. bought from The Lane & Bodley Company, of Cincinnati, a complete saw-mill outfit, consisting of boilers, engine, and machinery, etc., at the agreed price of $10,698.75, of which a part was paid in cash, and for the balance, the purchaser gave notes, at nine, twelve, fifteen and eighteen months. It was understood at the time, that Matthews was acting for the company which was in contemplation, though the sale was made to him, and the property (which for convenience, will be called the saw-mill outfit, or saw-mill plant) was shipped to him. It seems probable, however, that by the time it reached Louisiana, the company had been organized, so that the machinery was put up, as the company’s mill, on land for which the company took a bond for title from Wadley and Crowell, upon May 30, 1891. This bond, which was duly recorded, stipulates that the Lake Bisteneau Lumber Company agrees to pay said Wadley and Crowell, within two years from its date,. $4,816.60, with 10 per cent, additional from June 14, 1890, and also to’ pay an outstanding note of Wadley’s for $1,000.00, with interest, the payment to be made in monthly instalments, as the lumber on the land should be used by the company, and further stipulates, that “when all the conditions are complied with, W. G. Wadley and C. T. Crowell are to make a good and valid title to the Lake Bisteneau Lumber Company, Limited, to 1260 acres of land, more or less”, which is described, including section 7, township 17, range 9. Shortly after those arrangements, had been made, an agent of The Lane & Bodley Company was sent down to obtain securify for the unpaid balance due that concern. With this view, he conferred with Matthews, the president of the Lumber Company, and obtained legal advice, the result of which was that it was decided that Matthews should buy, in his own name, the particular five acres of land, upon which the mill had been erected, and give a mort- ’ gage thereon, and upon the plant, for the said balance. And, in order that said land should be properly identified, a surveyor was employed to furnish the requisite description, Wadley, who owned the entire *1943 section, consenting to make the sale, for the purpose stated. The surveyor, accordingly, furnished a certificate, which was supposed to describe the five acres in question, and Wadley, upon July 29, 1891, in consideration of the sum of $25.00 cash, made title to -.Matthews, to “the south half of the northeast quarter of the northeast quarter of the northeast quarter of section 7, township 17 north, range 9 west, Webster Parish, La.,” it being undoubtedly the understanding of both parties that the land so conveyed was that upon which the mill then stood. Thereafter, upon August 1st, 1891, Matthews mortgaged said land together with the mill plant, said to be thereupon, to The Lane & Bodley Company, to secure his notes, amounting to $9,691.19, given for the purchase price of- said plant. Subsequently, The Lane & Bodley Company seemed to have thought it advisable to obtain some security or recognition from the Lake Bisteneau Lumber Company, and upon April 1st, 1892, that company gave its notes for the balance then due, though the notes previously given by Matthews were not, surrendered or cancelled.
Upon May 17, 1893, the stockholders of the Lake Bisteneau Lumber Company authorized Matthews, its president, to execute the note of the company for twenty thousand dollars, and to secure the same by mort-gage in favor of C. A. Andrews, on section 7, T. 17, R. 9, and the entire mill plant and machinery, etc., “for the purpose of securing “ funds to liquidate the indebtedness and for the purpose of operating “the business of the company, and making necessary improvements.” And, upon the same day, the note was made and an act of mortgage executed to secure it, affecting said section 7, “and improvements “ thereon, including steam saw-mill, fixtures, and entire mill plant,” and also certain other property with which we are not now concerned. This act was executed in the name of The Lake Bisteneau Lumber Company, and of its members and officers, officially and individually, but it contains no recital as to the receipt of the twenty thousand dollars, or any part of it, nor does it acknowledge any indebtedness to O. A. Andrews, the mortgagee, to whom the note was made payable. It is also to be observed that the parties waived the production of a mortgage certificate.
This transaction was followed, on June 16, 1893, by the sale, by Matthews, to The Lake Bisteneau Lumber Company, of the S. 1-2 of the N. E. 1-4 of the N. E. 1-4 of the N. E. 1-4 of Section 7, T. 17, *1944 R. 9, upon which, according to the recital of the act “said Lumber Company has placed valuable improvements, and an extensive mill plant for the sawing and manufacturing of pine lumber.”
Following this, upon September 26, 1893, W. G. Wadley, by act before J. A. Thigpen, notary, sold to Richard Furman certain parcels of land, and among them, the section 7, in question, “less the S. 1-2 of the N. E. 1-4 of the N. E. 1-4 of the N. E. 1-4, previously conveyed to H. S. 'Matthews, and by said Matthews to the Lake Bisteneau Lumber Company.” And, upon November 14, 1893, Furman filed a suit in the District Court, setting up the possession of his author, alleging that the Lake Bisteneau Lumber Company was a tenant at will, but that it had refused to vacate, at his request, and praying for its ejection and the quieting of his possession.
But upon March 26, 1894, D. B. Hamilton and L. M. Carter, syndics of “Furman & Hamilton,” sold to the Merchants’ and Farmers’ Bank of Shreveport, the property which Furman had acquired from Wadley, and which was the subject of the said suit; and the bank, upon the same day, sold said property to The Lake Bisteneau Lumber Company for $6,500.00, represented by three notes, secured by mortgage; and, a few days later, to-wit: March 31, 1894, Wadley, in compliance with the obligations of the bond for title, which had been given by him, relinquished and quit claimed said property to said company. Upon September 5, 1894, The Lane & Bodley Company filed suit in the District Court claiming the balance due on the notes given by Matthews, which was stated to be $6,124.93, praying for judgment against Matthews, with recognition of mortgage on the S. 1-2 of the N. E. 1-4 of the N. E. 1-4 of the N. E. 1-4 of Section 7, etc., and of vendor’s lien on the mill plant said to be thereon established. There was judgment! for plaintiff, October 30, 1S94, for the amount claimed, with recognition of mortgage and vendor’s privilege on the five acres in question, and, particularly, on the “steam engine, boilers, and saw-mill machinery now on said land,” which property was specifically ordered by said judgment to be seized and sold to satisfy plaintiff’s demand. And, agreeably to this judgment, a writ of execution issued, December 11, 1894, and thereunder, the sheriff seized the property upon which the mill was actually situated.
The seizure thus made was enjoined by The Lake Bisteneau Lumber Company, January 11, 1895; said company alleging, in substance, that *1945 the sheriff was about to sell its property under a judgment to which it was not a party; that the land seized formed no part of that described in the mortgage upon which said judgment was based, but was entirely different from that mortgaged to The Lane & Bodley Company, and belonged exclusively to it; and that the mill plant on said land had become immovable by destination and was not subject to seizure, separately from the land. The Lane & Bodley Company was not made a party to this suit, which was directed against the sheriff, alone, but said company came in by way of opposition. Thereafter, a receiver was appointed by the Federal Court to The Lake Bisteneau Lumber Company, and the receiver objected to, and moved to dismiss, said opposition, with the result that a judgment was rendered, which, by error, appeared to dismiss the suit, and which was reversed on| appeal (Lumber Company vs. Sheriff, 49 Ann., 1283). Thereafter, however, the objection to said opposition was sustained, and upon a second appeal, the judgment of the court a qua was again reversed, the question involved being stated in the syllabus, as reported, as follows, to-wit:
“The asserted error of an act of mortgage, in describing the property, “ may be inquired into and corrected on the intervention of the mort- “ gage creditor, in the suit of an alleged owner enjoining the execution a of the mortgage creditor, the petition of intervention containing the ■“ requisite allegations to show and admit proof of the error.”
Lake Bisteneau Lumber Co. vs. Mims, Sheriff, 50 Ann., 619.
Whilst this litigation was going on, to-wit February 23, 1895, the Bank of Minden filed a petition in the District Court claiming to be a judgment creditor of the Lake Bisteneau Lumber Company in a sum exceeding four hundred dollars; alleging the insolvency of the company, and praying for a judgment of forfeiture and the appointment of ■a receiver; and, the company admitting the facts stated, a receiver was appointed upon the day that the petition was filed, and, upon March Hth, following, the receiver applied for and obtained an order to sell all ■of the property of the company. No action appears to have been taken under this order, however, and, upon July 29, 1895, the district judge made the following order, in a suit entitled “Lake Bisteneau Lumber Company vs. Bank of Minden,” to-wit:
“In this case, by reason of the law and evidence being in favor of the " plaintiff, and, further, by reason of the consent of parties, it is *1946 “ ordered, adjudged, and decreed that the decree and judgment made by " this court in the suit of The Bank of Minden vs. The Lake Bisteneau “ Lumber Company, Limited, No. 1366 of the docket of said court, be, “ and the same is hereby declared void and is annulled. It is further “ ordered that A. Goodwill, appointed by said decree liquidating com- “ missioner and receiver of said Lumber Company, is discharged. That “ said Goodwill immediately deliver to said company all of its property, “ effects, rights, credits, books, papers, etc., which came into his pos- “ session, or under his control, as such. And it is further ordered that “plaintiff pay costs of this suit; and that the claim of plaintiff for “ damages he dismissed.”
Upon the same day that this order was made, July 29, 1895, C. A. Andrews, and J. II. Gearhart filed separate suits, in said District Court, praying for oiders of seizure and .sale against the said company, Andrews, upon the note of twenty thousand dollars, which has been mentioned before, and Gearhart (an original member of the company), upon four notes, amounting to $1,800.00, secured by mortgage on a little railroad owned by the company. The writs were issued, as prayed for, the seizure was made; II. O. Walter (another original member of the company) was appointed keeper, and, upon September 21, 1895, the property, including the whole of section 7, T. 17, R. 9, and the mill plant, was offered for sale, under both writs, and adjudicated to O. A. Andrews, for $18,900.00, which was credited on said writs, after deducting the costs. Upon March 13, 1896, Andrews sold the entire property to E. L. Trigg, for fifty thousand dollars, of which nothing was paid in cash, the purchaser giving notes, for the whole amount, payable in from one to ten years, and waiving the mortgage certificate and proof of payment of taxes.
Upon August 17, 1896, R. L. Trig-g- sold the property, by such title as he had received from Andrews, and without warranty or mortgage certificate, to the Dauehite Lumber Company, composed of himself and two other persons, the consideration being the assumption of his obligation to Andrews. Upon October 2.1, 1896, D. W. Pratt, sheriff of Webster Parish, who had succeeded the former sheriff, Minims, advertised for sale, on the execution issued on The Lane & Bodley Company’s judgment, the land and mill plant, as described in that judgment and writ. And, upon November 17, 1896, the present injunction was sued out by the Dauehite Lumber Company, Limited.
*1947 Thereafter, to-wit: March 12, 1898, the Dauchite Lumber Company,, reconveyed said property to Andrews for and in consideration of the surrender, by Andrews, of the notes which R. L. Trigg had given, as, representing the purchase price thereof, and which had been assumed by said company, the parties waiving the production of the mortgage certificate.
Upon the same day, to-wit: March 12, 1898, Andrews sold the property to the Long Bell Lumber Company, for forty thousand dollars, no-part of which was cash, and the mortgage certificate was again waived.
It further appears that the title passed from the Long Bell Lumber Company, as to the existence of which there seems to be some doubt, to-the Globe Lumber Company; and that R. L. Trigg is now managing it for the latter concern.
And it further appears, from the testimony of the present- surveyor of' Webster Parish, that the mill plant in controversy stands on W. 1-2 of' the S. E. 1-4 of the N. E. 1-4 of the N. E. 1-4 of section 7, T. 17, N, Rl 9, W. instead of upon the S. 1-2 of the N. E. 1-4 of the N. E. 1-4 of the N. E. 1-4 of said section, as it appears in the title of the defendant, in injunction.
The sheriff in proceeding to execute the judgment obtained by the-defendant in injunction issued his notice, and published his advertisement, in the following terms, to-wit:
“By virtue of a writ of execution issued by the District Court in and “ for Caddo Parish, Louisiana, and to me directed, I have seized and’ “will sell at public auction, during legal sale hours, to the last and “ highest bidder, and according to law, at the court house door in the' “town of Minden, Louisiana, on Saturday, November 26, 1896, the- “ following- described property:
“South half of the northeast quarter of the northeast quarter of the- “ northeast quarter, Section 7, township 17, north, range 9, west, containing- five acres, in said Parish of Webster, La., together with all' “buildings and improvements, particularly steam engine, boilers and' “machinery; seized as the property of H. S. Matthews,” etc.
The plaintiff in injunction makes no objection to the sale of the* property thus described, but alleges, and it is so admitted by the defendant, that it is the purpose of the sheriff, upon the basis of the seizure of'which this notice and advertisement are given and published, to sell: *1948 five acres of ground adjoining' that which is thus described, together with the improvements thereon.
We are of opinion that this can not be done. Leaving out of view all -question of adverse title and possession, and assuming that the plaintiff 'in injunction has no greater rights than the judgment debtor, the law requires the sheriff to give notice of the property which has been seized, and the advertisement is intended to inform possible purchasers as to ■the identity of the property which is to be sold, neither o'f which purposes would be subserved if the notice and advertisement describe property other than that which the sheriff seizes and intends to sell.
The learned judge of the District Court, in his carefully prepared -opinion, says: “It is evident that the defendants’ contention is, that they have the right to sell the land, as described in the writ, and at the same time, sell machinery which is not, and never has been, on said land;” and, holding that such a course was unauthorized, he gave judgment “perpetuating the injunction, sued out in this case,” against the ■seizure and sale of the machinery claimed by the plaintiff separately from the land on which it stands,” and reserving all other issues. We take it for granted that the view, as thus stated, was the one presented in the District Court, but the concluding language of the brief filed in this court on behalf of the defendants in injunction is a prayer that the defendants’ “rights, under their mortgage and vendor’s lien and judgment, in suit No. 4701, be recognized and enforced on the land on which the said mill plant stands, as well as the machinery and buildings thereon;” and the evidence shows that the purpose is to sell the land on which the mill stands, together with the improvements, etc., though the notice of seizure, and advertisement, describe another parcel •of land and the improvements thereon.
Thfs being the case, and in view of the fact that this court has ralready held, in the matter of “The Lake Bisteneau Lumber Company vs. Mimms, Sheriff, et al,” 50 Ann., 619, that the error in the act of mortgage can be so enquired into and can be corrected in a proceeding of this character, we think it advisable that the decree in the instant case should be confined strictly to the issue presented, to-wit: Whether the sheriff, acting pursuant to a notice of seizure and advertisement of particular imoperty, can proceed to sell property other than that ■described.
*1949 It is, therefore, ordered, adjudged and decreed, that the judgment-appealed from be modified in) so far as that the defendants in injunction-are perpetually enjoined from further proceeding with the seizure and sale of the property herein claimed by the plaintiff upon the basis of the notice of seizure and advertisement as heretofore given and published, and that, as thus modified, said judgment be affirmed, -thenppellant to pay all costs.